IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBERTA RUANE and JOHN RUANE, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

HOMETAP EQUITY PARTNERS, LLC; HOMETAP HOLDINGS II, LLC; and HOMETAP INVESTMENT PARTNERS II, L.P.,

Defendants.

Case No.: 2:26-cv-00875-CCW

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY ACTION**

Defendants Hometap Equity Partners, LLC, Hometap Holdings II, LLC, and Hometap Investment Partners II, L.P. (collectively, "Hometap") move for an order (1) compelling Plaintiffs Roberta Ruane and John Ruane to arbitrate their claims on an individual basis, and (2) staying this action pending resolution of the arbitration.

## INTRODUCTION

The Ruanes agreed to binding arbitration and delegation provisions when they executed an Option Purchase Agreement (the "Agreement") with Hometap. Under that Agreement, Hometap paid the Ruanes an initial investment amount to purchase the right—an option—to later acquire an ownership interest in the Ruanes' home. The Agreement did not obligate the Ruanes to repay that sum. Instead, the Ruanes were obligated only to hold open the option. If Hometap exercised that option (which required paying the Ruanes an additional sum), or if the Ruanes repurchased the option, Hometap would receive the value of its ownership interest in the property. At no point would it receive repayment of a monetary obligation from the Ruanes. The Agreement thus reflected an option contract and investment plan but did not extend credit.

Yet the Ruanes assert that the Agreement qualifies as a "residential mortgage loan" subject to the Truth in Lending Act (TILA), such that TILA precludes the arbitration and delegation provisions to which they agreed. *See* 15 U.S.C. § 1639c(e)(1). They are wrong—a "residential mortgage loan" extends "credit," meaning it involves a "debt." The Agreement does not incur a debt because the Ruanes had no repayment obligation under it. In any event, the Agreement's delegation provisions require the Ruanes to present this threshold arbitrability question of TILA's application to an arbitrator. This Court should compel individual arbitration and stay this action.

## BACKGROUND

### I. The Ruanes enter into the Option Purchase Agreement with Hometap.

Hometap offers innovative home equity investment arrangements to homeowners who could otherwise only access their home's equity by taking out a loan. The Ruanes took advantage of Hometap's offerings by executing the Agreement in May 2021, when the Ruanes' property was worth around $410,000. Decl. Ex. A (Schedule A) at 1. The Ruanes "agree[d] to sell to Hometap an exclusive and irrevocable option … to acquire an undivided percentage interest … of fee simple title ownership" in that property. *Id.* (Option Purchase Agreement) at 2, § 1.1. To purchase that option, Hometap paid the Ruanes an "Investment Amount" of $38,979.[1]

The Agreement gives Hometap the "right," but not the obligation, "to exercise the Option" by paying an additional "Exercise Payment" of 1% of the Investment Amount ($389.79). Decl. Ex. A (Option Purchase Agreement) at 6, § 2.5; *id.* at 9, § 3.1(e). It also allows the Ruanes to repurchase the option from Hometap. *Id.* at 5, § 2.4(a)-(b).

If the option is exercised or repurchased, Hometap receives the value of its ownership interest (the "Hometap Percentage"). The value of that ownership interest depends on the property's value. If the home has appreciated, the Hometap Percentage is 15.845%; if it has depreciated, it is 13.204%. Decl. Ex. A (Schedule A) at 1. If Hometap exercises the option, its "Hometap Share" equals the property's value multiplied by the Hometap Percentage. *Id.* at 4, § 2.2; *id.* (Schedule A) at 3. If the Ruanes repurchase the option, the repurchase price is also based on the Hometap Share's value. *Id.* at 5, § 2.4(a)-(b).

The Agreement does not require the Ruanes to repay the initial investment amount. If the

[1] The Ruanes received a net amount of $36,697.13, after fees and costs. *Id.* at 3, § 1.4(a); *id.* (Schedule A) at 1-2.

option is exercised or repurchased, the Ruanes retain that amount. Their only obligations are to hold open the option and, if it is exercised or repurchased, allow Hometap to share in the property's value. And, of course, the option may never be exercised. The Agreement provides that "if the Option expires, then you will not be obligated to return or repay the Investment Amount" and that "[u]nder no circumstances will the Investment Amount accrue interest." Decl. Ex. A at 12, § 4.1(i).

## II. The Option Purchase Agreement contains an arbitration agreement and delegation provisions.

The parties agreed to arbitration: "any and all disputes or claims … whether arising out of or relating to this Agreement or the other Investment Documents … will be resolved exclusively through final and binding arbitration, rather than a court." *Id.* (Option Purchase Agreement) at 23, § 8.13(a). The parties acknowledged that the Federal Arbitration Act "governs the interpretation and enforcement of this Arbitration Agreement," and the Ruanes agreed to arbitrate on an individual and non-class basis. *Id.*; *see id.* at 24, § 8.13(c).

The parties also agreed to delegate threshold arbitrability questions to an arbitrator: "[a]ll issues are for the arbitrator to decide, including issues relating to the scope, enforceability, and arbitrability of this Arbitration Agreement." *Id.* at 24, § 8.13(e). The contract also incorporated the AAA Rules' delegation provision. *See id.*; Am. Arb. Ass'n, Consumer Arbitration Rules and Mediation Procedures 14 (2022) (Rule 7(a)) ("The arbitrator shall have the power to rule on [their] own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or the arbitrability of any claim or counterclaim.").

## III. The Ruanes file a putative class action against Hometap.

The Ruanes filed this putative class action in May 2026. They allege that the Agreement is a disguised residential mortgage loan and claim that Hometap violated TILA as well as state usury and unfair trade practices laws. *See* Compl., ECF No. 1.

## LEGAL STANDARDS

The FAA requires courts to enforce arbitration agreements by compelling arbitration and, when requested, staying litigation pending arbitration. *See* 9 U.S.C. §§ 3-4; *Smith v. Spizzirri*, 601 U.S. 472, 475-76 (2024). Where "the existence of a valid agreement to arbitrate between the parties is apparent from the face of the complaint, courts must accept as true the facts established by the pleadings," akin to "the standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *Young v. Experian Info. Sols., Inc.*, 119 F.4th 314, 317-18 (3d Cir. 2024) (cleaned up). Courts may also consider exhibits attached to the complaint and undisputedly authentic documents on which the claims are based. *MZM Constr. Co., Inc. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 395-96 (3d Cir. 2020).

## ARGUMENT

The Agreement mandates arbitration of this entire dispute, including the threshold question of whether the Agreement is a "residential mortgage loan" for which TILA bars arbitration.

### I. The arbitrator must decide threshold arbitrability issues.

#### A. A valid agreement to delegate threshold questions exists.

The Agreement's arbitration provisions delegate threshold issues of arbitrability to the arbitrator, both through the specific delegation provision and by incorporating the AAA Rules and their delegation requirement. Decl. Ex. A at 24, § 8.13(e). Together and independently, these provisions supply "clear and unmistakable evidence" that the parties agreed to arbitrate any initial questions of whether a dispute is arbitrable. *Henry Schein*, *Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019); *see Chesapeake Appalachia, LLC v. Scout Petroleum*, LLC, 809 F.3d 746, 763-64 (3d Cir. 2016) (collecting cases holding that incorporation of AAA Rules is clear and

unmistakable evidence of agreement to arbitrate arbitrability).

Because these delegation provisions exist, this Court's only role is to determine whether they are enforceable. *Henry Schein*, *Inc.*, 586 U.S. at 67-68; *Rent-A-Ctr., West, Inc. v. Jackson*, 561 U.S. 63, 72 (2010). They are. Pennsylvania law governs contract formation here and requires offer, acceptance, and consideration. *McCoy v. Pan Am. Grp.*, No. 2:21-CV-00389-CCW, 2022 WL 1136953, at *2 (W.D. Pa. Apr. 18, 2022) (Wiegand, J.). Each element is satisfied: Hometap offered the Agreement; the Ruanes accepted by signing; Hometap provided $38,979 as consideration; and both parties manifested assent through execution. *See* Decl. Ex. A at 28-29 (signature pages). The parties thus formed a valid agreement to delegate threshold arbitrability issues, and those provisions are enforceable.

**B. Neither the Ruanes' unconscionability allegations nor TILA change this conclusion.**

The Ruanes fail to overcome this showing by alleging unconscionability in the Agreement. "[U]nless [a party] challenge[s] the delegation provision specifically," courts "must treat it as valid … and must enforce it under [9 U.S.C.] §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Rent-A-Center*, 561 U.S. at 72. The Ruanes' complaint does not single out the delegation provisions for attack. Instead, their unconscionability theories target the Option Purchase Agreement generally. *See* Compl. ¶¶ 75–87, 288. That is precisely the type of challenge that *Rent-A-Center* assigns to the arbitrator.

Even if the Ruanes' unconscionability challenge targeted the delegation provisions, such a challenge would fail. Under Pennsylvania law, a contract must be both procedurally and substantively unconscionable. *Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 230 (3d Cir. 2012). The Ruanes show neither.

The delegation provisions are not procedurally unconscionable. They were not hidden—

they appear under the conspicuous all-caps instruction to "PLEASE READ THIS SECTION CAREFULLY AS IT AFFECTS YOUR RIGHTS." Decl. Ex. A at 23, § 8.13. The Agreement also directed the owner to "discuss the Agreement with tax, legal, and financial advisors and with family members," which the Ruanes acknowledged they "had the opportunity to do." *Id.* at 27, § 8.22. And the Ruanes had a three-business-day right to cancel the entire agreement. *Id.* at 3, § 1.3. That opt-out opportunity further supports enforceability. *Mancuso v. MDG USA, Inc.*, No. 23-1963, 2024 WL 1230149, at *2 (3d Cir. Mar. 22, 2024).

Nor are the delegation provisions substantively unconscionable. They are mutual—either party's arbitrability challenge goes to the arbitrator. And the Ruanes identify nothing about them that is "unreasonably favorable" to Hometap, the touchstone of substantive unconscionability. *See Quilloin*, 673 F.3d at 230 ("[S]ubstantive unconscionability refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent.").

Because the delegation provisions are valid and survive any unconscionability challenge (if raised), this Court should order arbitration without reaching further disputes about scope, TILA's applicability, or unconscionability. Those questions belong to the arbitrator.

TILA's bar on arbitrating the merits of a covered dispute does not change this conclusion. TILA precludes arbitrating a residential-mortgage-loan dispute; it says nothing about who determines whether the dispute involves a residential mortgage loan (and is thus arbitrable or not) in the first instance. Because TILA does not dictate "who is empowered to decide arbitrability in the first instance," courts consistently enforce delegation provisions like the ones here. *Veneziani v. Unison Agreement Corp.*, No. 22-cv-1789, 2023 WL 4201961, at *2 (W.D. Wash. June 27, 2023); *see also Baskin v. EK Real Est. Servs., NY, LLC*, No. 21-cv-727, 2022 WL 17742738, at *10 (E.D. Tex. Sept. 14, 2022) (holding that "nothing in the TILA provision[] invoked here …

bars the delegation of questions of arbitrability."). This Court should take the same course.

## II. Even if the Court reached threshold arbitrability questions, no valid ground for avoiding arbitration exists.

This Court should not go beyond the delegation provisions' validity. But if it did, it should reach the same result: arbitration of the dispute. All requirements for enforcing the arbitration agreement are met, and nothing precludes arbitration.

### A. This dispute falls within the arbitration agreement's scope.

The arbitration agreement broadly requires arbitration of "any and all disputes or claims … whether arising out of or relating to this Agreement or the other Investment Documents … or any aspect of the relationship or transactions between" the parties. Decl. Ex. A at 23, § 8.13(a). Each of the Ruanes' claims arises from the execution and terms of the Agreement and falls within that scope. And the arbitration agreement was validly executed: Hometap offered the contract; the Ruanes accepted by signing; Hometap provided $38,979 as consideration; and both parties manifested assent through execution. *See* Section I.A. The agreement should be enforced.

### B. TILA does not apply to the Option Purchase Agreement.

Yet the Ruanes contend that the Agreement is a "residential mortgage loan" governed by TILA, such that TILA's arbitration bar would preclude enforcing the arbitration agreement here. They are incorrect.

#### 1. The Option Purchase Agreement does not extend credit.

TILA defines a "residential mortgage loan" as a "consumer *credit* transaction … secured by a mortgage, deed of trust, or other equivalent consensual security interest on a dwelling or on residential real property that includes a dwelling." 15 U.S.C. § 1602(dd)(5) (emphasis added). Thus, to qualify as a "residential mortgage loan," a transaction must extend "credit."

TILA defines "credit" as "the right granted by a creditor to a debtor to defer payment of

debt or to incur debt and defer its payment." *Id.* § 1602(f). TILA does not define "debt," so the ordinary meaning controls: "debt" is something "owed." And "owed" requires an obligation to repay. *See Cornelius v. CVS Pharmacy Inc.*, 133 F.4th 240, 246 (3d Cir. 2025); Debt, Owe, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1976).

Consistent with those definitions, a "credit transaction" involves "the right of deferred payment … promised in exchange for some form of consideration." *Persinger v. Sw. Credit Sys., L.P.*, 20 F.4th 1184, 1195 n.5 (7th Cir. 2021); *see Riethman v. Berry*, 287 F.3d 274, 277 (3d Cir. 2002) ("The hallmark of 'credit' under the [Equal Credit Opportunity Act] is the right of one party to make deferred payment."). But TILA does not reach every future payment; it requires deferred payment "of debt," meaning an obligation to repay money loaned. 15 U.S.C. § 1602(f); *see Persinger*, 20 F.4th at 1195 n.5. Similarly, a "loan" permits a debtor to defer payment, but that payment is always eventually due to be repaid, typically with interest. *See* Loan, BLACK'S LAW DICTIONARY (4th ed. 1968) ("[A]dvance of money with an absolute promise to repay"; "payment of money by one to another to be repaid some future day").

In sum, a "residential mortgage loan" under TILA requires a contractual repayment obligation: the borrower receives money and agrees to pay it back.

The Agreement does not meet this standard. It does not require any repayment of any debt, much less repayment with interest. On the contrary, the Ruanes have no obligation to repay the initial investment payment. All they must do is hold open the option and, if the option is exercised (for an additional sum) or repurchased, allow Hometap to share in the home's value. That return to Hometap, if any, is then based on a formula linked to the property value, not to the initial investment amount. Indeed, if the home's value falls below approximately $295,200, Hometap recovers *less* than the $38,979 it invested. *See* Decl. Ex. A (Schedule A) at 1. Hometap, not the

homeowners, bears the downside risk—the antithesis of a credit transaction, where the lender is entitled to repayment regardless of the collateral's value. At base, whatever Hometap's return or lack thereof, the initial investment amount always stays with the Ruanes, with no contractual requirement to repay it.

This absence of any repayment obligation is dispositive, as the only federal court to have considered a similar option contract has recognized. In *Foster v. EquityKey Real Estate Investments, L.P.*, the court held that EquityKey's option agreement did not extend "credit" because the contract did not "guarantee that the payment received by [the homeowner] need ever be returned." No. 17-cv-67, 2017 WL 1862527, at *4 (N.D. Cal. May 9, 2017). If EquityKey "elect[ed] not to exercise its option," the homeowner would "not owe it any money." *Id.* In short, the agreement was not a loan because the homeowner "did not agree to 'repay absolutely' the option premium payment." *Id.* The same conclusion applies here. Because the Agreement did not create a "debt," it did not extend "credit," and it is not a "residential mortgage loan" for which TILA bars arbitration.

**2. The Agreement is an option contract and an investment plan.**

The Agreement's status as an option contract and investment plan confirms this view. The CFPB's Official Staff Commentary expressly excludes both "option contracts" and "investment plans in which the party extending capital to the consumer risks the loss of the capital advanced" from the definition of "credit." 12 C.F.R. Pt. 1026, Supp. I, Subpt. A, cmt. 2(a)(14)(1)(vii), (viii). That regulatory commentary warrants "due respect." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 403 (2024). The Option Purchase Agreement fits both exclusions.

An option contract extends a "continuing offer" and restricts the optionor's "power to revoke [that] offer." Restatement (Second) of Contracts § 25 & cmt. a. The Third Circuit has

recognized that the discretion not to exercise an option is the "hallmark" of an option contract. *See Bd. of Trustees of Trucking Emps. of N.J. Welfare Fund, Inc.–Pension Fund v. Centra*, 983 F.2d 495, 503 (3d Cir. 1992). The Agreement is a textbook option contract: Hometap paid for an option to receive a percentage ownership interest and has discretion as to whether it exercises it.

The CFPB's commentary further excludes from "credit" an "investment plan[] in which the party extending capital to the consumer risks the loss of the capital advanced." 12 C.F.R. Pt. 1026, Supp. I, Subpt. A, cmt. 2(a)(14)(1)(viii). That scenario describes the Agreement: Hometap's recovery hinges on the home's value, and once the home value falls below roughly $295,200, Hometap recovers less than it paid, with no claim for the shortfall. *See* Decl. Ex. A (Schedule A) at 1. This "risk of loss" makes the Agreement an investment plan.

In line with this persuasive agency commentary, and the Agreement's lack of a repayment obligation for the Ruanes, the Agreement does not extend "credit," create a "debt," or operate as a "loan" subject to TILA. Its arbitration provisions are therefore enforceable.

### C. The arbitration agreement is not unconscionable.

No unconscionability argument changes this result. As with the delegation provisions, the arbitration agreement is not procedurally or substantively unconscionable. It appears under a conspicuous all-caps heading and warning, the Ruanes could consult advisors, and they had a three-business-day right to opt out. *See* Decl. Ex. A at 23, § 8.13; *id.* at 27, § 8.22; *id.* at 3, § 1.3; *Mancuso*, 2024 WL 1230149, at *2. And it binds both parties equally while incorporating the AAA Rules' consumer-protective procedures, including limited fees. Decl. Ex. A at 25, § 8.13(g).

## CONCLUSION

For these reasons, Defendants request that this Court (1) compel Plaintiffs to submit their claims to individual, binding arbitration, and (2) stay this action under 9 U.S.C. § 3.

Dated: July 13, 2026

Respectfully submitted,

MCGUIREWOODS LLP

*/s/ Issac deVyver*
K. Issac deVyver (PA I.D. No. 202655)
260 Forbes Avenue, Suite 1800
Pittsburgh, PA 15222
Telephone: (412) 667-6057
Email: kdevyver@mcguirewoods.com

*Counsel for Hometap Equity Partners, LLC, Hometap Holdings II, LLC, and Hometap Investment Partners II, L.P.*

**CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing document to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered participants.

Dated: July 13, 2026

*/s/ K. Issac deVyver*
K. Issac deVyver (PA I.D. No. 202655)

*Counsel for Hometap Equity Partners, LLC, Hometap Holdings II, LLC, and Hometap Investment Partners II, L.P.*