**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

ROBERTA RUANE and JOHN RUANE, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

HOMETAP EQUITY PARTNERS, LLC, HOMETAP HOLDINGS II, LLC, and HOMETAP INVESTMENT PARTNERS II, L.P.,

Defendants.

Case No. 2:26-cv-00875-CCW

**PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO**
**<u>DEFENDANTS' MOTION TO COMPEL ARBITRATION</u>**

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. FACTS ..... 1

III. ARGUMENT ..... 3

A. Summary of Argument ..... 3

B. The Court should determine threshold questions about whether the HEI and its arbitration provision are illegal ..... 4

C. The TILA prohibits arbitration provisions in residential mortgage loans ..... 5

1. The HEI is a residential mortgage loan under the TILA ..... 6

2. Additionally, the HEI is unconscionable and therefore unenforceable ..... 14

3. In the alternative, the Court should permit limited discovery on the legality of the contract ..... 15

IV. CONCLUSION ..... 16

## TABLE OF AUTHORITIES

**Cases**

*Burnett v. Ala Moana Pawn Shop*, 3 F.3d 1261, 1262 (9th Cir. 1993)........................................... 7

*Cf. Lafferty v. St. Riel*, 495 F.3d 72, 82 (3d Cir. 2007)................................................................ 6

*Coinbase, Inc. v. Suski*, 602 U.S. 143, 151 (2024) ........................................................................ 5

*Cole v. U.S. Cap.*, 389 F.3d 719, 726–27 (7th Cir. 2004) ............................................................. 8

*Commonwealth v. Hometap Equity Partners, LLC*, 2025 WL 2468564, *6-8 (Mass.Super.Ct. Aug. 21, 2025) ......................................................................................................... 3, 13

*Coribessa, Inc. v. Susaki*, 602 U.S. 143, 147 (2024) ............................................................... 4, 5

*Foster v. Equitykey Real Est. Invs. L.P.*, No. 17-CV-00067-HRL, 2017 WL 1862527 (N.D. Cal. May 9, 2017)......................................................................................................... 13

*Fowler v. Equitable Tr. Co.*, 141 U.S. 384, 403 (1891) ................................................................ 7

*Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013)....................... 15

*In the Matter of the Investigation of Unlock Partnership Solutions* (June 22, 2026)................... 14

*Kohlman v. Grane Healthcare Co.*, 279 A.3d 42, 48 (Pa. Super. Ct. 2022)................................ 14

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412–13 (2024) .............................................. 10

*MacDonald v. CashCall, Inc.*, 883 F.3d 220, 226 (3d Cir. 2018) .................................................. 5

*Merck & Co. v. United States*, 652 F.3d 475, 483 (3d Cir. 2011) ...................................... 8, 9, 12

*Muskal v. Point Digital Finance*, CV 2025-024855 (Ariz. Super. Ct. Dec. 19, 2025)............. 4, 14

*Olson v. Unison Agreement Corp.*, 2025 WL 2254522, *4 (9th Cir. Aug. 7, 2025) ................. 3, 13

*Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010)............................................................. 5

*Rossman*, 280 F.3d at 392, 399 ................................................................................................ 7, 8

*Scott v. Lloyd*, 34 U.S. 418, 446–47 (1835)...................................................................................... 7

*Simpson v. Penn Disc. Corp.*, 5 A.2d 796, 798 (Pa. 1939) .......... 7, 15

*Smith v. Berryhill*, 587 U.S. 471, 479 (2019) .......... 8

*Somerset Consulting, LLC v. United Cap. Lenders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011) .......... 15

*State By & Through Adams v. New Jersey Zinc Co.*, 193 A.2d 244, 252 (N.J. 1963) .......... 10

*Stone v. Real Estate Equity Exchange, Inc.*, 671 B.R. 752, 758 (Bankr.D.Colo. July 30, 2025) .......... 3, 13

*Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566 (2012) .......... 8

*Vallies v. Sky Bank*, 2007 WL 2492730, at *4 (W.D. Pa. 2007) .......... 8

*Weingot v. Unison Agreement Corp.*, 2025 WL 2778400, *6 (E.D.N.Y. Sept. 30, 2025) .......... 3

**Statutes**

12 C.F.R. Pt. 1026, Supp. I, Subpt. A, cmt. 2(a)(14)(1)(viii) .......... 10, 14

9 U.S.C. § 2 .......... 6

15 U.S.C. § 1602(cc) .......... 8

15 U.S.C. § 1602(dd)(5), (f) .......... 4, 6, 8

15 U.S.C. § 1639c(e)(1). .......... 1, 3, 6, passim

Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. § 201-1 *et seq.* 2

the Pennsylvania Usury Law, 41 Pa. Stat. Ann. § 101 *et seq* .......... 2

Truth in Lending Act of 1968, 15 U.S.C. §1602 *et seq* .......... 2

**Other Authorities**

*American Heritage Dictionary* (1st ed. 1969) .......... 8, 10

*Black's Law Dictionary* (12th ed. 2024) .......... 10

*Oxford English Dictionary* (1980) .......... 8

*Webster's New Collegiate Dictionary* (9th ed. 1983) ........................................................................ 8

## I. INTRODUCTION

Plaintiffs, Roberta Ruane and John Ruane ("Plaintiffs"), by and through their undersigned counsel, hereby responds to Defendants Hometap Equity Partners, LLC, Hometap Holdings II, LLC, and Hometap Investment Partners II, L.P's (collectively "Defendants" or "Hometap") Motion to Compel Arbitration and Dismiss the Complaint, or Alternatively, Stay Proceedings ("Motion to Compel"). Defendants' Motion must be denied. Defendants spend their Motion discussing the Federal Arbitration Act which it inaccurately argues requires this action be compelled to arbitration. However, as discussed below: "No residential mortgage loan . . . may include terms which require arbitration or any other nonjudicial procedure as the motion for resolving any controversy or settling any claims arising out of the transaction." 15 U.S.C. § 1639c(e)(1). Defendants' product is a residential mortgage loan under the Truth in Lending Act, and the arbitration provision is therefore invalid on its face. Because the arbitration provision is directly prohibited by federal law, Defendant's Motion must be denied.

## II. FACTS

This matter arises out of Plaintiffs' contract with Hometap, called a "Home Equity Investment," or "HEI." Compl. ¶ 11. The parties entered into their HEI on May 20, 2021. *Id.* ¶ 94. Plaintiffs were drawn to the HEI as—what they were lead to believe was—a safer alternative to a high-interest mortgage, to help them through a difficult financial situation brought on by the COVID-19 pandemic, job loss, and pay cut. *Id.* ¶ 90. Hometap markets the HEI as an "investment," not a "loan," and holds themselves out to be "investment managers." *Id.* ¶¶ 96-97. Within the text of the contract, the HEI is called an "option" agreement. *Id.* ¶ 14.

Plaintiffs' HEI works as follows: (1) Hometap provided Plaintiffs with an upfront cash payment of $38,979, or after closing costs, $36,697.13 ("Investment Amount"), which represented

8.95% of their home's value; (2) after ten years, Hometap has the option to purchase a share of Plaintiffs' home, 15.845% if the value goes up, or 13.204% if the value goes down ("Hometap Percentage"); (3) in consideration for the exercise of the option, Hometap would pay Plaintiffs $389.79 ("Exercise Payment") and receive the share of the home in return; (4) Plaintiffs may buy out of the HEI at any time by paying the Hometap Percentage; and (5) Hometap's interest in the home is secured by a mortgage instrument. *Id.* ¶ 104.

Immediately upon entering into their HEI contract, in order to pay off and exit the contract, in addition to closing costs, Plaintiffs would have had to pay Hometap 15.845% of their home's value, or $64,964.50, approximately 67% more than their Investment Amount. *Id.* ¶ 105. As of the writing of the Complaint, Plaintiffs' home is now estimated to be worth $571,600. If Plaintiff were to payoff and exit their HEI contract at this time, in addition to closing costs, Plaintiffs would owe Hometap $90,570.02, approximately 132% more than their Investment Amount. *Id.* ¶ 106. At the end of the ten-year term, in consideration of Hometap's obtaining a 15.845% share of Plaintiffs' future home value, Hometap would pay to Plaintiffs the Exercise Payment of only $389.79. *Id.* ¶ 108. Plaintiffs are thus facing an effective interest rate of over 12%. *Id.* ¶ 109.

Hometap's HEI contracts are predatory mortgage loans, intentionally structured as sham "options" in name only with *de minimis* option-like provisions for the sole purpose of avoiding regulations under the Truth in Lending Act of 1968, 15 U.S.C. §1602 *et seq*. ("TILA"), which is meant to protect homeowners from predatory, malicious, unfair, and unconscionable mortgage contracts. Plaintiffs bring this action to assert their rights under the TILA, the Pennsylvania Usury Law, 41 Pa. Stat. Ann. § 101 *et seq.*, and the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. § 201-1 *et seq.* ("UTPCPL"), to bar Hometap's grossly unfair, usurious, and illegal mortgage contract.

Hometap now seeks to compel arbitration under the HEI. However, Hometap's arbitration provision is illegal and must fail because the TILA expressly prohibits residential mortgage loans from having mandatory arbitration provisions. 15 U.S.C. § 1639c(e)(1). For these reasons, Plaintiffs respectfully request that the Court deny Hometap's motion.

## III. ARGUMENT

### A. Summary of Argument

Defendants' Motion attempts to avoid the federal law's clear bar on arbitration clauses in mortgage loan documents. The issue before this Court is not whether under a consumer contract an arbitration clause should be enforced but rather whether Defendants' product is a residential mortgage loan, for which arbitration provisions are expressly unenforceable under federal law. In other words, if the Court finds the loan is for residential loan, the arbitration clause is not enforceable. Courts who have considered this issue have found that similar products offered by Defendants have violated state and federal loan laws and are residential home loans. See, *Olson v. Unison Agreement Corp.*, 2025 WL 2254522, *4 (9th Cir. Aug. 7, 2025) (Under similar arguments made by Defendants in this case, the 9th Circuit rejected lenders' arguments that the contract was an option agreement exempt from lending laws rather than a loan.); *Commonwealth v. Hometap Equity Partners, LLC*, 2025 WL 2468564, *6-8 (Mass.Super.Ct. Aug. 21, 2025) (The Commonwealth's Consumer Protection claims against Hometap for similar loans alleged in this case were found to be a loan as opposed to an option agreement exposing defendant to liability.); *Stone v. Real Estate Equity Exchange, Inc.*, 671 B.R. 752, 758 (Bankr.D.Colo. July 30, 2025) (The District of Colorado found that similar option loans were in fact mortgage loans exposing defendant to liability under state laws.); *Weingot v. Unison Agreement Corp.*, 2025 WL 2778400, *6 (E.D.N.Y. Sept. 30, 2025) (The Eastern District of New York found loans may be deceptive and subject to state laws.); *Muskal v. Point Digital Finance*, CV 2025-024855 (Ariz. Super. Ct.

Dec. 19, 2025)(Arizona Court denied defendant's motion to compel arbitration finding similar loans were in fact mortgage loans**.),** attached hereto as Exhibit A.

Although these courts are nearly universally finding that loans provided by Hometap were, in fact, mortgage loans, Defendants are now attempting to avoid this issue entirely. Instead of defending their loans provided to consumers, Defendants now attempt to avoid liability and repercussion in a class action by asserting these loans are option contacts not subject to the bar on arbitration clauses. However, as this brief will demonstrate, Defendants reported arbitration clauses are unenforceable because under federal law, arbitration clauses cannot be enforced in mortgage loan contracts. See 15 U.S.C. § 1602 (dd)(5). Thus, Defendants' Motion to Compel Arbitration should be denied.

**B. The Court should determine threshold questions about whether the HEI and its arbitration provision are illegal**

Defendants assert that their delegation clause in the contract requires this Court to remand to an arbitrator to determine whether the arbitration clause is enforceable. Defendant is wrong. "[A]rbitration is a matter of contract." *Coribessa, Inc. v. Susaki*, 602 U.S. 143, 147 (2024). To "refer[] a dispute to an arbitrator," there must be some valid and enforceable arbitration agreement. *Id.* at 149. And a delegation clause "is simply an additional, antecedent agreement" to arbitrate arbitrability that is subject to the same principles as "any other." *Id*. at 148; *see also Adler v. Gruma Corp.*, 135 F.4th 55, 66 (3d Cir. 2025) ("A delegation clause is merely a specialized type of arbitration agreement, which a court must evaluate in the same manner as it would any other arbitration agreement.") (cleaned up). Accordingly, for a delegation clause—as much as any other agreement to arbitrate—"[i]f a party challenges the validity of the precise agreement to arbitrate at issue, the federal court *must* consider the challenge before ordering compliance with that

arbitration agreement." *Coribessa*, 602 U.S. at 151. "To hold otherwise would be to impermissibly elevate a delegation provision over other forms of contract." *Id.* at 152.

To "challenge the delegation provision specifically," a plaintiff is merely required to "reference the provision in its opposition to a motion to compel arbitration." *MacDonald v. CashCall, Inc.*, 883 F.3d 220, 226 (3d Cir. 2018) (cleaned up). And "[i]n specifically challenging a delegation clause, a party may rely on the same arguments that it employs to contest the enforceability of other arbitration agreement provisions." *Id.* at 226–27; *see also Coinbase, Inc. v. Suski*, 602 U.S. 143, 151 (2024) ("[W]here a challenge applies 'equally' to the whole contract and to an arbitration or delegation provision, a court must address that challenge."). That requirement is easily satisfied here, as Plaintiffs expressly assert that the delegation clause is illegal and unconscionable, and Plaintiffs' arguments apply equally to the delegation clause and the remainder of the arbitration provisions. Hometap's reliance on *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010), is thus inapposite.

When Plaintiff argues that an arbitration clause is unenforceable as a matter of law, the Court decides that question, not an arbitrator, regardless of a delegation clause. *See Coribessa Inc. supra.* Delegation clauses only remove a court's obligation to decide whether the dispute is subject to arbitration when there is a dispute as to whether the parties agreed to arbitrate. In this case, pursuant to the TILA, the arbitration clause is not enforceable. There is not a factual dispute as to whether the parties agreed to arbitrate but rather whether the arbitration clause is enforceable as a matter of law. For this reason, this Court must decide whether the arbitration clause is enforceable and Defendants' Motion to Compel Arbitration should be denied.

**C. The TILA prohibits arbitration provisions in residential mortgage loans**

Defendant further argues the arbitration clause is binding even if this Court does not delegate whether this dispute is arbitrable. This position is erroneous, because arbitration

provisions are unlawful under federal law in this type of contract. A threshold issue before the Court is whether the HEI is a "residential mortgage loan," because the TILA expressly prohibits residential mortgage loans from having mandatory arbitration provisions.

> No residential mortgage loan and no extension of credit under an open end consumer credit plan secured by the principal dwelling of the consumer may include terms which require arbitration or any other nonjudicial procedure as the method for resolving any controversy or settling any claims arising out of the transaction.

15 U.S.C. § 1639c(e)(1). This language tracks the Federal Arbitration Act ("FAA"), which applies to agreements to arbitrate "a controversy arising out of [a] . . . transaction" involving commerce. 9 U.S.C. § 2. In other words, to fall within the FAA's coverage, the parties' dispute must be a "controversy," the very same language that triggers the TILA's bar on arbitration. The HEI's delegation clause is thus prohibited in the same manner that the rest of the arbitration provision is. *Cf. Lafferty v. St. Riel*, 495 F.3d 72, 82 (3d Cir. 2007), *as amended* (July 19, 2007), *as amended* (Nov. 23, 2007) ("Although §§ 1404(a) and 1406(a) address different situations, the doctrine of *in pari materia* nevertheless applies because both provisions deal with venue.").

### 1. The HEI is a residential mortgage loan under the TILA

Hometap's attempt to avoid this clear bar on arbitration is based on its self-serving interpretation of the definitions of "residential mortgage loan" and "credit" within the context of its "option" agreement:

> The term "residential mortgage loan" means any consumer credit transaction that is secured by a mortgage, deed of trust, or other equivalent consensual security interest on a dwelling or on residential real property that includes a dwelling . . .
>
> The term "credit" means the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment.

15 U.S.C. § 1602(dd)(5), (f).

As a matter of contract interpretation under Pennsylvania law, the Court must look at the substance of the HEI over its technical form. It has been long recognized that contracts in which usury is alleged must be strongly scrutinized to uncover their true intent and practical outcomes. *See Simpson v. Penn Disc. Corp.*, 5 A.2d 796, 798 (Pa. 1939) ("As usury is generally accompanied by subterfuge and circumvention of one kind or another to present the color of legality, it is the duty of the court to examine the substance of the transaction as well as its form, and the right to relief will not be denied because parol proof of the usurious character of the transaction contradicts a written instrument."); *Scott v. Lloyd*, 34 U.S. 418, 446–47 (1835) ("The statute against usury not only forbids the direct taking of more than six per centum per annum for the loan or forbearance of any sum of money but it forbids any shift or device, by which this prohibition may be evaded and a greater interest be in fact secured."); *Fowler v. Equitable Tr. Co.*, 141 U.S. 384, 403 (1891) ("There is no more familiar rule in the law than that the usury laws cannot be evaded by mere pretenses, shifts, or evasions. This rule runs through all of the books and requires the citation of no authority in its support. The policy of the statute is to protect the weak and necessitous from the oppression of the strong, and to sanction such transactions as this would be to defeat that policy.").

In interpreting whether the TILA applies to a transaction, courts must interpret the TILA to ensure that financial companies may not "circumvent" their statutory "obligations" through "strategic" product structures. *Rossman*, 280 F.3d at 392, 399; *see also Burnett v. Ala Moana Pawn Shop*, 3 F.3d 1261, 1262 (9th Cir. 1993) ("Because the Truth in Lending Act is liberally construed to protect consumers, the lack of this sort of ambiguity would not have prevented the court from looking past the form of the transactions to their economic substance in deciding whether the Act applied."). The TILA does not "elevate superficial form over meaningful substance." *Vallies v.*

*Sky Bank*, 2007 WL 2492730, at *4 (W.D. Pa. 2007) (citing *Rossman v. Fleet Bank (R.I.) Nat. Ass'n*, 280 F.3d 384, 390 (3d Cir. 2002)).

The TILA's definition of "residential mortgage loan" easily encompasses Defendants' product. The TILA's use of the word "any" in its definition of residential mortgage loan—"any consumer credit transaction," 15 U.S.C. § 1602(dd)(5)—indicates that "consumer credit transaction" should be read "expansively," *Smith v. Berryhill*, 587 U.S. 471, 479 (2019). The TILA also defines the term "credit" broadly as "the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment." 15 U.S.C. § 1602(f). The term "debt" is not defined, so courts "give the term its ordinary meaning." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566 (2012). Debt means something that is owed. *See* Debt, *Webster's New Collegiate Dictionary* (9th ed. 1983); Debt, *American Heritage Dictionary* (1st ed. 1969) ("something owed, as money, goods, or services"); Debt, *Oxford English Dictionary* (1980) ("something owed by one person to another"). A "'credit transaction' contemplates an agreement by which the right of deferred payment is promised in exchange for some form of consideration." *Id.*; *see also Cole v. U.S. Cap.*, 389 F.3d 719, 726–27 (7th Cir. 2004) (compiling cases rejecting a narrow interpretation of "credit" under the TILA). This is further supported by the TILA's explicit regulation of "reverse mortgages," a form of "nonrecourse" credit transaction in which the creditor has a right to collect from its interest in collateral property, not against the borrower. 15 U.S.C. § 1602(cc).

The Third Circuit has recognized that "a formal 'legal obligation' is not an absolute prerequisite for a determination that a transaction is a loan." *Merck & Co. v. United States*, 652 F.3d 475, 483 (3d Cir. 2011). "[I]t is more appropriate that, in determining whether there was an 'obligation' to repay, the court look to whether the transferor's intention was to structure the

transaction to ensure repayment of funds as a practical matter, rather than to whether there were *literally* no conditions on repayment." *Merck & Co. v. United States*, 652 F.3d 475, 483 (3d Cir. 2011).

The HEI falls squarely within the definition of "credit transaction" or "loan," an obligation to provide Hometap the future value of one's home, in exchange for upfront consideration, with Hometap's rights guaranteed by a mortgage instrument. The mortgage instrument even expressly acknowledges Plaintiffs' payment obligations, including "[p]ayment of the Hometap Share owed to Hometap pursuant to the terms of the Option Agreement." *See* Mortgage and Security Agreement attached as Exhibit B, ¶2(c)(i).

And while guaranteed repayment is not a requirement to be "credit" under the TILA, Defendants do take several steps to ensure that the debt will be repaid. It will only enter a contract if its market analysis and evaluation of the home demonstrates that it will appreciate in value and result in a profit for Hometap. Compl. ¶¶ 67-68. And the contract ensures repayment at a profit by setting limitations on Plaintiffs' use of the property:

- requiring the homeowner to pay all secured obligations, or be found in default and risk foreclosure or additional fees, Hometap Loan Agreement, Exhibit C, ¶6.1(a); 7.2(a)-(k);
- limiting the ability of the homeowner to rent out or vacate the property, Hometap Loan Agreement, Exhibit C, ¶6.1(b);
- limiting the debt that may be incurred by homeowner, Hometap Loan Agreement, Exhibit C, ¶4.1(h);
- controlling any sale or valuation of the home at the conclusion of the contract, Hometap Loan Agreement, Exhibit C, ¶ 2.6(a);
- require the homeowner to pay all fees associated with the sale of the home or other costs associated with the end of the contract. Hometap Loan Agreement, Exhibit C, ¶ 2.6 (d)(ii)

- allowing Hometap to unilaterally extend the term of the contract, Hometap Loan Agreement, Exhibit C, ¶ 6.1(d); and
- entitling Hometap to unilaterally sell the property at the expiration of the ten-year term to obtain its share, without the homeowner's involvement, Hometap Loan Agreement, Exhibit C, ¶ 2.7(c).

An option does not create an ownership interest in the underlying asset. *State By & Through Adams v. New Jersey Zinc Co.*, 193 A.2d 244, 252 (N.J. 1963) ("An option does not create any interest in the land."). An extension of credit—secured by a mortgage—however, does.

Nor is the HEI an "investment plan," as Hometap argues, by which Hometap "risk[ed] the loss of the capital advanced." *See* 12 C.F.R. Pt. 1026, Supp. I, Subpt. A, cmt. 2(a)(14)(1)(viii) (CFPB commentary); *but see Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412–13 (2024) ("Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority."). An investment is "[a]n expenditure to *acquire* property or assets to produce revenue." Investment, *Black's Law Dictionary* (12th ed. 2024) (emphasis added); *see also* Investment, *American Heritage Dictionary* ("Property or another possession *acquired* for future financial return or benefit.") (emphasis added). Acquiring property means taking on burdens of ownership and risks of loss, as illustrated by the commentary's example: "[A]n arrangement with a home purchaser in which the investor pays a portion of the downpayment and of the periodic mortgage payments in return for an ownership interest in the property, and shares in *any* gain or loss of property value." 12 C.F.R. Pt. 1026, Supp. I, Subpt. A, cmt. 2(a)(14)(1)(viii) (emphasis added). In contrast, Hometap takes an inequitable amount of any appreciation of the home, profits even if the home greatly depreciates, and takes on none of the burden of ownership of the property, thereby offloading all of the risk of depreciation to the homeowner. This guarantee of a profit for Hometap with no responsibility, even when the value of the home drops, is characteristic of a debt, not an investment.

When the substance of the HEI is viewed critically, in light of the strong public policy against usury and the TILA's liberal construction in favor of consumers, it is clear that the HEI is a predatory mortgage loan and not a *bona fide* option contract or investment.

This is clear from a simple review of how the HEI option works, which objectively shows that it is not provided at a fair valuation. A typical call option is the right, but not the obligation, to purchase a specific asset at some time in the future (the expiration) at an agreed price (the strike price). The price of such as option is a function of the current value of the asset, the strike price, time to expiration, and the volatility of the asset's value. In other words, the further into the future an option expires, the lower its strike price, and the greater the uncertainty of the final price, the higher the option's value.

Here, the HEI—if interpreted as an option—is a call option with an underlying asset tied to 15.845% of Plaintiffs' home (at the time the contract was entered, worth $64,964.50), a strike price of $389.79, and an expiration of 10 years. At this *de minimis* strike price, long expiration, and highly uncertain future asset value, the price of such an option should be far greater than the original value of the underlying asset. Instead, Plaintiffs were paid the HEI's designated price of the option, a much lower amount of $36,697.13. Indeed, the moment the HEI was signed, the value of the option was well above the original purchase price, giving Hometap an immediate unrealized profit of more than $30,000. By any objective, reasonable, good faith valuation, the price paid to Plaintiffs for the option on their home was so incredibly low as to be irrational and unconscionable, such that it cannot be viewed as a fair contract, let alone a *bona fide* option.

Hometap cannot reasonably argue that it bears substantial risk in entering into an HEI, as not only does it enter into the contract at an immediate profit, but also its profit will only go up as home prices go up. The risk that home prices will go down, such that Hometap would actually lose

money on an HEI is extremely remote. In the case of Plaintiffs' area, median sale prices have gone up 7.41% over the last three years.[1] But the value of Plaintiffs' home would have to drop over 25% to less than $300,000 before Hometap would experience a loss. Not only does Hometap only target homes with rising values, but also regardless of the amount or direction of any price change, the volatility of home prices further underscores how undervalued Plaintiffs' "option" was at the time of entering into the HEI. Further, to argue as Hometap does that the HEI is truly an "option" and not a loan—because Hometap may choose to *not* exercise its option and not receive its Hometap Share at the end of the contract—is disingenuous. To exercise the option would cost Hometap a *de minimis* $389.79 while providing Hometap with 15.845% of Plaintiffs' home (or 13.204% if the home depreciates)—tens of thousands, if not hundreds of thousands, of dollars. Only if the value of Plaintiffs' home dropped to the unreasonable level of $2,952 would it ever be against Hometap's interest to exercise the option, virtually guaranteeing that Hometap will receive its share. *See Merck*, 652 F.3d at 483 ("It cannot be true that a party may convert a loan into a sale merely by including a provision establishing one condition precedent for repayment, no matter how unlikely that condition."). The only reasonable view of the HEI is as an extension of credit, guaranteed by a mortgage instrument on Plaintiffs' home. At its core, the HEI provides the homeowner a large upfront payment, and at the end of the contract, the homeowner pays back either a large cash payment or an equivalent value of their home. When viewed as a loan, the interest rate on Plaintiffs' loan is over 12%, and under the HEI contract terms, can reach as high as 20% based on the appreciation of Plaintiffs' home, well above the statutory maximum at the time for a mortgage loan under Pennsylvania law of 4.5%. Compl. ¶ 190.

---

[1] https://www.realtor.com/local/market/pennsylvania/allegheny-county/pittsburgh

The only court to have considered similar claims against Hometap arising out of substantially the same HEI contract ruled that it is plausibly alleged to be a residential mortgage loan covered by the TILA, usury laws, and state consumer protection laws. *See Com. v. Hometap Equity Partners, LLC*, No. 2584CV00469-BLS2, 2025 WL 2468564, at *7 (Mass. Super. Aug. 21, 2025) ("[T]he Commonwealth has alleged facts which plausibly suggest the HEIs are loans and thus violate G. L. c. 93A because they are illegal mortgage loans (Count I), violate the criminal usury statute (Count II), and violate required state and federal loan disclosures (Count IV)."). Hometap did not cite this case in its brief, but did cite a single other example, *Foster v. Equitykey Real Est. Invs. L.P.*, No. 17-CV-00067-HRL, 2017 WL 1862527 (N.D. Cal. May 9, 2017), a 10-year-old case which involved a 50-year option contract tied to 100% of the appreciation of the underlying property, making it a much more speculative agreement. The Superior Court of Massachusetts similarly distinguished *Foster*. *See Hometap*, 2025 WL 2468564, at *7.

More recent cases have similarly ruled that predatory "option" contracts are extensions of credit and cannot evade regulation under state and federal homeowner protection laws. *Olson.*, No. 23-2835, 2025 WL 2254522, at *4 ("[G]iven the details of the particular structure of *this* overall arrangement, which includes a formal option as one component but effectively creates the substance of a shared-appreciation reverse mortgage, we conclude that Unison's agreement with the Olsons sufficiently gave rise to a 'credit obligation' to fall within the statute."); *Stone*, 671 B.R. at 757. ("The Debtor alleges she understood, and continues to understand, the Agreement to be a home-secured loan, which she would repay when she sold her home. The documents Unison sent to the Debtor allegedly confirm the Agreement is a loan and include statements making it clear the Debtor would be required to pay Unison back. Taking these allegations, amongst others, as true and viewing them in the light most favorable to the Debtor, the Court finds the Debtor has stated

a plausible claim for relief and the second prong is satisfied as to the Debtor's State Law Claims.") (footnotes omitted); *see also* Assurance of Discontinuance, *In the Matter of the Investigation of Unlock Partnership Solutions* (June 22, 2026), https://coag.gov/app/uploads/2026/06/26.06.22-Unlock-AOD-fully-executed.pdf (in action brought by Administrator of the Uniform Consumer Credit Code, contract for "percentage interest in the future value" of home was alleged to be "(a) 'consumer credit transactions' under Colorado law; and (b) 'variable rate transactions' as that term is defined and used 12. C.F.R. Part 1026."); *Muskal,* No. CV 2025-024855 (Ariz. Super. Dec. 17, 2025) ("The Court believes that the Truth in Lending Act prohibition against arbitration agreements would apply when the Court applies the language of the Act.") (*See* Exhibit A**).**

In sum, Hometap's product is a "residential mortgage loan" under the TILA. And "[n]o residential mortgage loan . . . may include terms which require arbitration." 15 U.S.C. § 1639c(e)(1). Hometap's Motion to Compel Arbitration must therefore be denied.

**2. Additionally, the HEI is unconscionable and therefore unenforceable**

"To invalidate or bar enforcement of a contract based on unconscionability, the party challenging the contract must show both an absence of meaningful choice, also referred to as procedural unconscionability, and contract terms that are unreasonably favorable to the other party, known as substantive unconscionability." *Kohlman v. Grane Healthcare Co.*, 279 A.3d 42, 48 (Pa. Super. Ct. 2022). "Procedural and substantive unconscionability are assessed under a sliding-scale approach, with a lesser degree of substantive unconscionability required where the procedural unconscionability is very high." *Id.*

As detailed above, the substantive unconscionability of the HEI is extremely high, with the contract offering grossly unfair and unreasonably one-sided terms hidden behind complex legal language and mathematical calculations, leaving homeowners with little to no understanding of the true nature of the contract they are entering into and how bad of a deal they are receiving. The

HEI is also procedurally unconscionable, as Hometap disguises what is essentially a predatory, usurious, illegal residential mortgage loan—without the protections of the TILA or state usury laws—behind dozens of pages of contract language, marketing, and in-person advice that is meant to induce a belief that an HEI is an "option" or even an "investment" that is favorable to the homeowner. Buried in the contract is advice to seek legal counsel before signing, despite this advice not being made verbally, and Hometap's employees suggesting throughout the process that they are trustworthy "investment" advisors. Hometap also targets unsophisticated homeowners who are in financial distress and therefore unable to understand the HEI fully or be able to seek counsel before signing. Finally, the arbitration provision (and its delegation clause) is yet another adhesive provision of the form contract that limits the rights of homeowners to seek relief.

Under these circumstances, the HEI is procedurally and substantively unconscionable and unenforceable against Plaintiffs. Plaintiffs are therefore not bound by its arbitration provision.

**3. In the alternative, the Court should permit limited discovery on the legality of the contract**

Plaintiffs assert that Hometap's motion may be readily denied "based on 'the face of a complaint, and documents relied upon in the complaint.'" *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (quoting *Somerset Consulting, LLC v. United Cap. Lenders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)). However, if the Court finds that more factual development is required, Plaintiffs respectfully request limited discovery into the legality of the HEI contract. *See id.* at 779; *see also Simpson*, 5 A.2d at 798 ("As usury is generally accompanied by subterfuge and circumvention of one kind or another to present the color of legality, it is the duty of the court to examine the substance of the transaction as well as its form, and the right to relief will not be denied because parol proof of the usurious character of the transaction contradicts a written instrument.").

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel Arbitration should be denied.

Dated: August 11, 2026

Respectfully submitted,

*/s/ Daniel C. Levin*
Daniel C. Levin, Esquire
PA Bar I.D. No.: 80013
Nicholas J. Elia, Esquire
PA Bar I.D. No.: 325978
**LEVIN SEDRAN & BERMAN**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: 215-592-1500
dlevin@lfsblaw.com
nelia@lfsblaw.com

D. Aaron Rihn, Esquire
PA Bar I.D. No.: 85752
Sara J. Watkins, Esquire
PA Bar I.D. No.: 325770
Stanley D. Ference IV, Esquire
PA Bar I.D. No.: 336090
**ROBERT PEIRCE & ASSOCIATES, PC**
437 Grant Street, Suite 1100
Pittsburgh, PA 15219
Tel: 412-281-7229
arihn@peircelaw.com
swatkins@peircelaw.com
mference@peircelaw.com

*Attorneys for Plaintiffs and the Putative Class*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was filed via the Court's CM/ECF system on this 11th day of August 2026 and is available for download by all counsel of record.

*/s/ Daniel Levin*
Daniel C. Levin, Esquire
*Counsel for Plaintiffs and the Putative Class*