IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBERTA RUANE and JOHN RUANE, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

HOMETAP EQUITY PARTNERS, LLC; HOMETAP HOLDINGS II, LLC; and HOMETAP INVESTMENT PARTNERS II, L.P.,

Defendants.

Case No.: 2:26-cv-00875-CCW

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY ACTION**

Plaintiffs' Opposition confirms that this dispute belongs before an arbitrator. The Ruanes signed an Option Purchase Agreement containing a clear, conspicuous delegation provision stating that "[a]ll issues are for the arbitrator to decide, including issues relating to the scope, enforceability, and arbitrability of this Arbitration Agreement." Agreement § 8.13(e). Plaintiffs do not dispute that they agreed to this language. Instead, they ask this Court to do precisely what the delegation clause forbids: decide whether TILA renders the arbitration agreement unenforceable. That is a quintessential threshold arbitrability question the parties delegated to the arbitrator. The Court should enforce the parties' agreement and compel individual arbitration.[1]

## ARGUMENT

### I. The delegation provisions require an arbitrator to decide whether TILA applies.

Plaintiffs misconstrue controlling precedent and TILA's terms in arguing that this Court must decide the arbitrability question of whether the Agreement is a "residential mortgage loan" governed by TILA. The Supreme Court's decision in *Coinbase v. Suski*, 602 U.S. 143 (2024), does not support this view. *Coinbase* simply provides that delegation clauses, like general arbitration clauses, are contracts whose validity courts must decide if challenged. *Id.* at 149, 151 (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 71 (2010)).[2] That rule does not allow this Court to decide whether TILA applies to the Agreement, because TILA does not invalidate delegation clauses.

Section 1639c(e)(1) provides that "[n]o residential mortgage loan … may include terms which require arbitration … as the method for resolving any controversy or settling any claims

---

[1] Motions to compel arbitration are non-dispositive in this district. *See, e.g.*, *Brown v. Power Block Coin, LLC*, No. 2:23-CV-00554-CRE, 2024 WL 1468375, at *1 n.1 (W.D. Pa. Apr. 4, 2024). Plaintiffs' Opposition exceeds this Court's 10-page limit by five pages.

[2] Given *Coinbase*'s repeated reliance on *Rent-A-Center*, it is hard to understand how *Coinbase* could somehow make Hometap's reliance on *Rent-A-Center* "inapposite," *contra* Opp'n at 5.

arising out of the transaction." 15 U.S.C. § 1639c(e)(1). Even if Plaintiffs are correct that the Agreement is a "residential mortgage loan" (*but see infra* pp. 3-5), TILA would not invalidate the delegation clause because that clause does not require arbitration to "resolv[e]" this "controversy" or to "settl[e]" any of Plaintiffs' "claims." It merely assigns to the arbitrator the threshold question of whether this controversy or Plaintiffs' claims are arbitrable.

Plaintiffs try to circumvent this conclusion by arguing that TILA's reference to "controversy" encompasses delegation provisions, because the FAA's reference to that term does. *See* Opp'n at 6. But the two statutes use the term differently. TILA bars arbitration to resolve "any controversy" that "ar[ose] out of the transaction." 15 U.S.C. § 1639c(e)(1). Here, those controversies are Plaintiffs' claims that Hometap violated TILA and state law. The FAA more broadly enforces agreements "to settle by arbitration a controversy thereafter arising out of such contract or transaction, *or the refusal to perform the whole or any part thereof*." 9 U.S.C. § 2 (emphasis added). A threshold arbitrability dispute is a "controversy" arising out of Plaintiffs' "refusal to perform" the Agreement's arbitration provisions under the FAA.

Moreover, whatever the scope of "controversy" in general, TILA's arbitration prohibition applies only to "residential mortgage loan" transactions. 15 U.S.C. § 1639c(e)(1). Whether the Agreement is such a transaction is the very question the delegation provisions assign to the arbitrator. TILA's arbitration bar cannot be triggered by the untested assertion that it applies. The Eleventh Circuit has reached just this conclusion, holding that § 1639c(e)(3) bars arbitration of contracts that "fall into a particular bucket" but does not bar an arbitrator from deciding *whether* a given contract falls into that bucket. *Attix v. Carrington Mortgage Services, LLC*, 35 F.4th 1284, 1308 (11th Cir. 2022). And the Third Circuit's decision in *Adler v. Gruma Corp.*, 135 F.4th 55, 66 (3d Cir. 2025), also confirms this view: TILA does not remove agreements from FAA coverage,

like the FAA's § 1 transportation-worker exemption; it bars arbitration only of merits disputes concerning residential mortgage loans, leaving threshold arbitrability questions for the arbitrator.

In contrast, *MacDonald v. CashCall, Inc.*, 883 F.3d 220, 230-32 (3d Cir. 2018), does not help Plaintiffs' position—there, the delegation clause was unenforceable because the designated tribal arbitral forum was "illusory," a defect absent here where the Agreement designates AAA.

It is also no answer to assert, as Plaintiffs do, that the Agreement is a residential mortgage loan governed by TILA, so TILA bars any arbitration here. That untenably circular view would nullify delegation provisions any time a plaintiff simply alleges TILA governs a contract, when TILA's terms require no such thing. The Supreme Court has rejected the idea that the perceived merits of an arbitrability challenge should dictate whether that challenge goes to the arbitrator. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019) (holding that courts may not "short-circuit the process and decide the arbitrability question themselves" based on how they perceive the strength of the claim for arbitration). This Court should thus enforce the delegation provision and compel this action to arbitration without resolving whether TILA applies.

**II. Even if the Court reaches arbitrability, TILA does not bar arbitration.**

Even if this Court reaches the TILA question, it should compel arbitration because TILA does not apply. The Agreement does not extend "credit." TILA defines "credit" as "the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment." 15 U.S.C. § 1602(f). "Credit" requires "debt"—an obligation to repay. Mot. at 8-9. The Ruanes have no such obligation to repay the $38,979 Investment Amount. But they contend that they have an obligation to pay Hometap *something* down the road, and that is enough. They are wrong both factually and legally.

Unable to identify a repayment obligation in the Agreement, Plaintiffs shift to an

impermissibly broad reading of TILA: that "credit" exists whenever one party advances money and the other must pay "something" back. Under that standard, every investment would be a "credit transaction" subject to TILA. That view is incorrect: a venture-capital investor receives proceeds from a portfolio company, a co-investor receives sale proceeds, and an option holder receives a return upon exercise, yet none has extended "credit." And it is not supported by *Merck & Co. v. United States*, 652 F.3d 475 (3d Cir. 2011)—a tax case, not a TILA case, that did not define "debt" or "credit." *Merck* held that repayment need not be absolutely guaranteed to constitute a loan—not that a transaction with no repayment obligation whatsoever qualifies as one. *See id.* at 483. The Ruanes have no obligation to repay the Investment Amount; even when the option is exercised, the Hometap Share is calculated by reference to the property's value—not as repayment of the amount advanced. Agreement § 2.2.

Indeed, Plaintiffs' broadened standard still would not reach this Agreement. Any payment to Hometap is contingent on Hometap's discretionary decision to exercise its option. Without exercise or the Ruanes' own decision to repurchase, the Ruanes owe nothing. Agreement §§ 3.2-3.3. The CFPB agrees, expressly excluding both option contracts and investment plans in which the capital provider risks loss from the definition of "credit." 12 C.F.R. Pt. 1026, Supp. I, Subpt. A, cmt. 2(a)(14)(1)(vii), (viii). That Plaintiffs point to contractual restrictions on the property, Opp'n at 9-10, does not change the analysis—those provisions protect Hometap's investment interest in the property's value, not a repayment obligation running from Plaintiffs to Hometap.

Reflecting the tension in their argument, Plaintiffs effectively concede that a "bona fide" option contract or investment plan is not "credit" under TILA. *See* Opp'n at 10-11. But they offer no principled dividing line to distinguish a so-called "bona fide" option from the Agreement, which has the defining features of both: it grants Hometap the right—but not the obligation—to acquire

an ownership interest, and it places Hometap's capital at risk by tying potential returns to the property's future value.

Plaintiffs supply no authority for a contrary conclusion. *Olson v. Unison Agreement Corp.*, No. 23-2835, 2025 WL 2254522 (9th Cir. Aug. 7, 2025), was unpublished and vacated, and does not support Plaintiffs' position. The Ninth Circuit applied Washington state law—not TILA—and recognized that Washington law need not be "interpreted consistently with the TILA." *Id.* at *5. The contract in *Olson* also involved a minimum repayment obligation absent here. *Id.* at *2.

## III. The arbitration agreement is not unconscionable.

Plaintiffs' unconscionability argument does not save them from arbitration. First, Plaintiffs challenge the Agreement generally—not the delegation clause specifically. Under *Rent-A-Center*, 561 U.S. at 72, a court may consider only challenges directed at the delegation provision itself; broader challenges to the container contract are for the arbitrator. In any event, the delegation provisions are not unconscionable. They appear under a conspicuous all-capitals heading (Agreement § 8.13); the Agreement advised the Ruanes to consult "tax, legal, and financial advisors" (*Id.* § 8.22); and the Ruanes had a three-business-day right to cancel (*Id.* § 1.3).

## IV. No discovery is warranted.

The parties' Joint Stipulation and this Court's Order staying all proceedings foreclose Plaintiffs' ambiguous request for discovery "on the legality of the contract." In any event, "discovery addressing a motion to compel arbitration is unnecessary when no factual dispute exists as to the existence or scope of the arbitration agreement." *Young v. Experian Info. Sols., Inc.*, 119 F.4th 314, 320 (3d Cir. 2024). "There is not a factual dispute as to whether the parties agreed to arbitrate[.]" Opp'n at 5. Whether the Option Purchase Agreement constitutes "credit" under TILA is a legal question of contract interpretation—not a factual one warranting discovery.

Dated: August 25, 2026

Respectfully submitted,

MCGUIREWOODS LLP

*/s/ K. Issac deVyver*
K. Issac deVyver (PA I.D. No. 202655)
260 Forbes Avenue, Suite 1800
Pittsburgh, PA 15222
Telephone: (412) 667-6057
Email: kdevyver@mcguirewoods.com

*Counsel for Hometap Equity Partners, LLC, Hometap Holdings II, LLC, and Hometap Investment Partners II, L.P.*

**CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing document to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered participants.

Dated: August 25, 2026

*/s/ K. Issac deVyver*
K. Issac deVyver (PA I.D. No. 202655)

*Counsel for Hometap Equity Partners, LLC, Hometap Holdings II, LLC, and Hometap Investment Partners II, L.P.*